we have case number 19-3544 United States v. Bellille Mr. Golubitsky and Ms. Edwards okay thank you sorry if we're not together in person Mr. Golubitsky whenever you're ready thank you your honor this is Alex Golubitsky I'd like to reserve five minutes of my argument for rebuttal time if that's acceptable that's fine let me open with one question just we got some factual questions that I think a number of us have okay you've only worked with the DeRusso firm on a few not from my perspective your honor from my perspective I work with attorney DeRusso on every piece of litigation that I am personally involved with except for this matter and because the order of the district court and what I would characterize to be a very small breach of contract matter in Bergen Superior Court outside of that every every other case that I litigate I work with attorney DeRusso on and do those relate to your company yes your honor that's correct okay Judge Greenaway had a question yeah um thank you Judge Ambrose just a follow-up on that in the record it appeared at the time that it may be different now because the record was there were four pieces of litigation is that correct I believe it was either four or five at that time your honor but but in that order Matt yes on that order correct yeah okay so so I just want to understand if I might question a little further on this now your in-house counsel for a corporation and how do you pronounce it it's Brisa Max it's actually misspelled in the in the district court record the first word is Brisa B-R-I-S-A the second word is Max and then the third word is Holdings V-I-L-L-C is the full name of the company we call it Brisa Max okay wonderful thank you so if I understand you're you're a full-time employee with Brisa Max that's correct yeah yes yes okay and that company generates all sorts of legal matters which you handle that is that right yes okay and of those matters litigation matters you refer out to the Daruza firm is that right yeah well yes your honor so so the overwhelming majority of my duties as in-house counsel don't involve litigation I would say probably 20 to 30 percent of my time is spent on litigation writ large for the litigation matters that we have in the United States or I should say outside of the United States Virgin Islands they're referred out to various outside counsel depending on expertise for virtually every piece of litigation in the Virgin Islands in general I do appear in those on all of those matters except for one attorney Daruza also represents works with me and also represents the company Brisa Max okay so if I take it like any litigation matter there are fees that are attorney fees that are generated yeah yes your honor that's correct okay and am I correct if I assume that Brisa Max pays attorneys fees to attorney Daruza that is for the firm yeah okay and am I also correct if if I assume that because your in-house counsel at Brisa Max when there are fees generated by the firm or by the work of mr. Daruza you do not receive any of those fees is that correct just just to clarify you what what you're asking is if the fees that are paid if I receive any of the fees that are paid to attorney Daruza for his services to Brisa Max is that correct yeah no I do not receive any of those fees your honor that that's okay and and so in your in your role as outside counsel with the firm as I understand it from the from the record is it do you receive any remuneration from either mr. Daruza or the law firm for services rendered well currently no prior to prior to when I began my role as in-house counsel I was actually of counsel with with attorney Daruza's firm I think from October probably of 2017 through maybe June of 2018 so when I had the same title at that time but during that period I did receive remuneration from attorney Daruza's firm but currently I do not so I just want to make that clear no no and I appreciate that so if we could just focus on the time period that's relevant to this litigation you're right so look you you're you're appointed your in-house counsel yes correct mm-hmm and you you you you make your initial motion there's a hiatus and in September you you make a second motion and I understand that the focus of the second motion different than the first I'm not getting into the substance right now but during that time period that I've just outlined you were in-house is that correct yeah that is correct your honor yes okay and then in September and I know the dates are close together but in September you take on a moniker of of counsel to the firm and then you make a second motion is that right well I made a motion technically it was the third motion to withdraw but yes okay that's fine fine fine I stand corrected thank you very much for that but at throughout this entire time until September your in-house counsel and you continue to be in-house counsel afterwards right and in fact you're in house counsel now that is correct your honor yeah okay so and and from this period of time when you first were appointed by Judge Gomez until now you received no remuneration for any of the cases that you brought to the DeRusso firm you've received no remuneration from the firm is that right that is correct your honor with one caveat that there is a one case that I'm working on with with Attorney DeRusso that may involve future remuneration directly to me from from the DeRusso firm but there has not been any current remuneration from that case up to the present day including time period you're I don't I don't have any further points on that particular point Judge Ambrose yeah the the question I have just at the outset is what was the time span of your being on the CJA list with respect to the court in the BI so so I think I want to say I'm guessing with these times your honor because I don't have it right in front of me I want to say they do sort of a call to join the panel in October of each year maybe so I think the first year that I signed up for it would have been October of 2014 and then I would have continued on it until February of 2017 okay what I'm Beavis it's just be this do you have an office at the DeRusso firm like a like a physical a physical a room a desk no no okay do you have access to the physical files in their office you don't have a I don't have a key to the building I couldn't just walk in and open up a file but but I do you if I need to I could I could ask do you have you have access to the electronic files at the DeRusso firm yes I do uh-huh so then that would include the the the file of our society are so I yes your honor but but I want to state that because of judge Gomez's order I have not ever accessed that that I could okay could you tell us what you the magistrate in October addressed you regarding screening can you tell us what if anything was done at that point did anything change in your access or access to files or anything else in relation to so what happened in October as the record indicates on October 31st attorney DeRusso was within st. Thomas and appeared in front of judge Gomez for the hearing when judge Gomez ordered us to consult with the magistrate judge Miller to implement this screening procedure we had a total of one meeting with with judge Miller which I believe was actually that same day in the nothing of substance was really discussed in that meeting in terms of attorney DeRusso and I's behavior with respect to the relevant files basically all magistrate Miller all judge Miller advised us is she hadn't been at the hearing with with judge Gomez and she needed to confer with judge Gomez to figure out sort of what the contours of her obligations were in this scenario and that she would get back to us and then we never had another that was the discussion of any screening procedure with the court question I'm sorry judge Beavis did you have a follow-up on that I didn't want it was just if if judge Gomez were here and if he were skeptical that whether in fact this is a real relationship if most of your work is on Brissa Max's cases etc you'd be working on these cases anyway you're not getting paid on most of them etc what would you say in response to him to convince him that this is a real of counsel relationship and not just not just not just just a name you don't have a key you don't have an office or anything else if this virtual access the other than accessing the files what is it that you'd say that is different from just having an in-house relationship and working with mr. DeRusso on what are mostly Brissa Max's own cases well so I think it goes to the heart of my professional relationship with attorney DeRusso I began practicing law on the Virgin Islands in 2013 with the focus on on federal tax litigation in the Virgin Islands and that's attorney DeRusso's field so since since 2013 I've worked very closely with attorney DeRusso beginning as I indicated in October of 2017 attorney DeRusso and I did have a formal relationship where I was you know really working on I can't say I was working on all of his files I don't know if I was working on all of his files but there's a significant number of cases which attorney DeRusso was bringing me on to work on under the of his firm at that time obviously when I began my position as in-house counsel I ceased that portion of my relationship with attorney DeRusso I was no longer of counsel I was no longer working on his cases but we continued to work together very closely in a large part of my responsibilities as in-house counsel go to tax matters not just litigation tax matters but general tax matters with which I conferred with attorney DeRusso on on a regular basis I mean if it's not daily it's pretty close to daily that attorney DeRusso are in contact talking about cases we don't I don't use his office in Miami I'm sorry I'm sorry I'm my interest when you talk to attorney DeRusso on these tax matters that you've just alluded to I may I assume that he earns fees for those for that time spent with you of course your honor yes yes of course and and and those fees are paid by Griesemax is that correct not well we have a whole family of companies that general yes that's correct now and and for the time that you're spent that you spend I should say chatting with mr. DeRusso on these tax matters that's in your role as in-house counsel yes your honor that is correct right so you're you're you you don't have any remuneration that you earn from the firm for those that consultation correct your honor yes okay I have one other question on the letterhead of mr. DeRusso's firm are you listed as up counsel I don't believe so your honor no I'm not I can I'm not okay so am I tell me if this statement is a reasonable statement if if I was a member of the public looking for tax advice and I looked up the DeRusso firm I would not see you listed anywhere on the website you know old-school and Martindale or anywhere I would not see your name listed as of counsel because is that that is correct your honor yes and how can you say you're of counsel I'm missing something well so just to sort of and I'm sorry if I was being a little bit long-winded but just to sort of finish the describing attorney my relationship with attorney DeRusso's firm the other area where I consult with attorney DeRusso regularly is in the area of criminal defense and when so initially when I was appointed to the little matter as you know I filed a motion to withdraw that basically said well because I'm in house counsel I have none of the trappings that are necessary to effectively represent a criminal defendant and you know I don't have a mechanism set up to accept fees I don't have a mechanism set up I don't have malpractice insurance I don't have any of these other sort of things that go along with with a law practice and so in fact the reassociation with my reassociation with attorney DeRusso's firm was largely driven by by my appointment to the in the Palil matter well was yeah was largely driven by it there's a couple other there's as I alluded to earlier is one other matter where it's sort of convenient for me to be of counsel but the main the main thing that I needed was I needed malpractice insurance which I was not able to I was not able to secure malpractice insurance without being associated with the fund because I don't currently have a firm that's active that with which I can acquire malpractice insurance and I needed access to like a billing software because I'm not currently set up to to bill hourly so it was the it was it was a practical issue that that drove me to associate with attorney DeRusso's firm not really a trials have you participated in as counsel in any court anywhere yes probably about 20 okay so you do have experience yes your honor and when you left the when that would have been in June of 2000 well let me let me caveat that as in house counsel in June of 2018 which is I think what you're asking I represented them as outside counsel before that so when you were on the CJA panel from October of 2014 to February of 2017 you were not in-house at the prism X correct your honor I was I was associated with a firm call I was an associate I should say at a firm called Marjorie Rawls Roberts PC during that time and when was when were you first appointed in this case that would have been in April of 2019 okay got it so you started with breezy max as in-house counsel in June of 2018 which is about 10 months before you were appointed in this case by Judge Gomez that is correct your honor yes okay just be this one follow-up if this case if the polio case had never come along would you still have become of counsel but with the same relationship um well it's hard to it's hard to deposit on the counterfactual but again and I can get into the details if you'd like but because there's one other matter which which is potentially an attorney fee matter it there was there was other reasons besides the below matter for me to associate with turning to resource fire I mean let me just talk about the elephant in the room I mean the concern is that I thought when I looked at the documents here that you affiliated yourself with the DeRusso firm something like around September of was he I thought was September of 2019 for 2018 yes that's correct mm-hmm and you filed a motion to the third motion to withdraw nine days later on September 19 is that correct yes your honor so I mean I mean the impression one could get although there's no finding by the district court here but the impression that one might get is that there's a game being played in order not to be involved with this particular counsel you affiliate yourself with somebody that you know and that somebody by the way is representing a witness against mr. Belial in this case and it looks funky well and I appreciate you just being forthright and putting in and putting that question out there your honor but but I and I understand why why it could have that that appearance but that that wasn't I mean all I can say is that is that was not our intent that was not my intent as you know I indicated in my went through a formal process of merging files and going through a complex screen like you like you would in in any in any sort of regular merger you know you know situation with two attorneys and and it's in that you know it's in that car I had no idea until that point I don't believe that that attorney DeRusso well actually I going back into my records I realized I had back in 2016 but I had a because I actually had a different conflict at that time with the firm that I was at in 2016 and I couldn't represent a cell as a yala but I don't think I knew that attorney DeRusso was actually appointed to represent a yala after I was or if I didn't know it at the time I had forgotten it but by the time summer of 2019 rolled around and we did our point of doing the conflict check but when you were considering merging I mean one of the things that we've always gone through at least in my old firm you're trying to bring somebody and you look at all the things that person's involved with they look at all the things you're involved with they try to determine conflicts would you have not known before September 10 that the DeRusso was representing Miss Ayala are you asking if I knew prior to sort of making the decision to do this merger if attorney DeRusso represented a yala am I correct I don't think that I did your honor I because I didn't know I'm trying to remember when there was I can't remember when I even learned that the yala was going to be a witness in in in the in the below matter what was your representation of her in 2016 or possible representation of her in 2016 well related criminal matter and I believe that's how ultimately you know she became a witness and in this matter is because of that original criminal matter okay but I you know that was a situation where I represent I've you know I was appointed and filed the motion to withdraw two days later and it was granted so it's not expensive so when did when did you discover that mr. DeRusso definitively discover mr. DeRusso was representing miss ayala um in that intervening period between September 10th at September 20th when when I when when I filed the motion have you or mr. DeRusso sought any waivers of conflict from miss ayala and mr. Belial I have not sought a waiver of conflict from from from mr. Belial I can't speak to whether attorney DeRusso has from from miss ayala I'd like to say that attorney DeRusso and I despite not having received the guidance that we were expecting from the court have tried as hard as we can to sort of give follow what the court ordered us to do so we don't actually discuss have you informed mr. Belial of the of the conflict yes yes your honor and what did he say mr. Belial has been adamant that he does not want me as his attorney all right let's hear from miss miss Edwards and then we'll get you back on her boat because we've kept you up here for 25 minutes already good morning your honors and may it please the court Meredith Edwards on behalf of the appellee of the United States do you have factual questions for me or did you want me to address the facts that have been elicited well you can you can start wherever you'd like I mean do you have any question about my main argument is that the the court should refrain from extending the collateral order doctrine to permit review of this order at this time the asserted right at issue is the Sixth Amendment right to effective assistance of counsel and that is a right that the Supreme Court has expressly held does not fall within the collateral order exception to the final judgment rule what we've got here is a motion to withdraw which is the Second cases motions to withdraw relate to counsel not so much to the Sixth Amendment right I mean I think you've got a good point on the Sixth Amendment because of the Flanagan case but motions to withdraw relate to counsel you know every well in almost every single case that I can come up with in the civil area a motion to withdraw meets the collateral order doctrine because it's effective among other things effectively unreviewable on appeal the there are few cases in the criminal context and Second Circuit Martin says yes you can use collateral order doctrine we've got a muddled history in our court where you've got the Bertoli case which appears to say you don't necessarily have it in connection with the collateral order doctrine in a case we're not counsel didn't want to withdraw they wanted to stay in but not be there full-time a standby counsel court refused and forced them to stay in and then of course says but it's so important so dramatic what's going on here that we're going to enter of all things a mandamus to say that the firm can get out of this particular relationship so I'm not quite sure that we have definitive Third Circuit law hi I would agree I would I would say that the fact that in this case the appellant as the attorney is the one who has raised this claim is not dispositive because the focus is on who that right belongs to whether that's a party to the underlying action or a non-party and here it belongs to the criminal defendant so the motions to disqualify belong to the criminal defendant motions to withdraw belong to the counsel I understood but in this particular case unlike in Erie for example where the attorney was appealing in order denying his withdrawal where he wasn't being paid and the court looked to the harm that that would cause the in terms of the harm the Sixth Amendment violation that it has on his client that the order has on his client so it is not a talent saying I am asserting this due to concerns that I have about facing ethical violations or sanctions this Edwards I thought that what appellant had done maybe not artfully is mesh the two I know that during the hearing there was a focus on the Sixth Amendment rights of mr. Galil but clearly there was a critical concern and he articulated as a motion to withdraw so it appears that both are well I say that the impetus for withdrawing is due to the concern that the representation infringes on it or violates a Sixth Amendment right his client Sixth Amendment right to conflict-free counsel and so I think at the end of the day the analysis is based on the asserted right at issue and if that's the case then it doesn't meet the collateral order doctrine but even if it's viewed as appellant asserting his right as an attorney not to represent in this case then the court should maintain the the preferred practice expressed in Bertoli and that's that of postponing review of an order directed at a non-party until the matter is concluded in the district court or until the party has been held in contempt well I agree that Bertoli did not in fact declined to institute a bright-line rule I think the reasons that the court refrained from extending the collateral order doctrine in that case hold just as much true today in this case well doesn't aren't the words of Bertoli important I mean it seemed that the court was specifically saying this is sui generis we've got a set of circumstances in fact that are rather unique we're not going to make contempt be the path that all future litigants have to take and they in fact said we're unwilling to accept the broad principle we're willing to set this as a bright line rule a broad principle doesn't that mean that we really should set Bertoli apart well I think your honor you're you're exactly right that the words matter and I would point the court to the wording where the the Bertoli court stressed the importance of being especially cautious and using the collateral order doctrine to avoid the general rule requiring contempt when doing so would make a set of orders that because of that the Bertoli court rightly concluded that extending the collateral order doctrine to permit review of quote in order directing the continued provision of litigation services to a client for whom an appearance has been entered in an ongoing case would pose a substantial likelihood of frequently unacceptable delay and substantially interfere with a fair and speedy disposition disposition of many criminal cases that's here now it's judge Beavis if I could ask you I think you are right that there are situations in which an existing lawyer trying to withdraw on the eve will delay the trial and Bertoli says that's at odds with the defendant's interest obviously the odds with the government's interest in getting the trial moving but here we have a situation where the lawyer was trying to withdraw many months before the trial date where this is not at odds with the defendant's interest but actually seems to support it and so I'm having a hard time understanding what the government's interest is in resisting this wouldn't the government prefer at least in these situations far in advance to have this resolved rather than getting a conviction that says it's going to be vulnerable to attack on appeal I'm having a hard time understanding why Bertoli ought to be read when it said it's not adopting a blanket rule why it's a good thing for the government of the administration of justice to read it that broadly well candidly I think that my position would likely be different if I was concerned that there was an actual conflict but here I think it makes sense to insist upon a non-party facing contempt when it appears that there really there is no no conflict but in name literally separated by an ocean you know at the time appellant's practice was here in the Virgin Islands for one corporation DeRusso is located in Florida as explained earlier today appellant does not share any physical space with the DeRusso firm it is a an set of cases where if he wanted to join knowing that he had this you know criminal case I am sure that he could and would and has enacted measures so that he doesn't access any confidential material related to Ayala and ensure that he doesn't put the Leal's files on the shared electronic server the so you say your position might be different if you thought that there was a actual conflict so you in effect answer to that that's the way I would have thought of it as well so I'm not criticizing you you're answering on the merits rather than on the jurisdictional issue and on the merits is there let's say if there was a withdrawal here when and how how would believe will be appointed counsel but what would happen do you know um I believe he would be appointed counsel and in short order okay I know that it's been difficult for the district court to find conflict-free counsel but I'm sure that the court would find a way and would be able to appoint counsel in short order okay judge Greenaway judge Beavis nothing perfect for me nothing thank you so much no thank you I was very helpful ma'am thank you thank you mr. Golubetsky well thank you your honor I guess I'd like to come back to just more fully answering or more fully describing I guess an answer to a question I was posed earlier which is if not for this the fact that I've been appointed in the polio matter what I have associated with with attorney DeRusso and I wanted to highlight because I probably should have known it before but but I didn't that there's a number of steps that I took prior to associating with attorney DeRusso to solve the problem I you know I've been transparent and it pains me to say it but it's the truth which is that I cannot on my own provide competent representation to the defendant in this case which was the basis of my initial motion to withdraw and when that initial motion was denied I took several steps I I you know I my first proposal to the court was to say okay let me associate with the unconflicted counsel who will simply who's not licensed in the Virgin Islands but who can who can pro hot you can enter an appearance pro hoc vichy with me and and who is an established criminal defense attorney to sort of do a lot of the heavy lifting because I'm I'm not able to do that and the court said no that that wouldn't be permitted and so at that time is when is when I looked into associating with it with a firm which is existing in in in the Virgin Islands to to continue on with this representation and an attorney DeRusso is not the only person who I had such a conversation with but but our the extent of our relationship outside of the little matter is what drove my desire to become associated with with attorney DeRusso's firm yeah but there are you there would you would be this is judge amber you would be disqualified in fact or the idea of having a relationship with the firm in this case would not work because that firm is representing a key witness in the case that's correct your honor so so ultimately what I was trying to do didn't work but but nonetheless I still felt that it was a better outcome than simply not associating with anybody and and continuing to provide what I associated and then you learned was it only afterwards that you learned about the Aracelis Ayala representation that's correct intervening 10-day period between September 10th when I associated with attorney DeRusso's firm and September 20th when I filed the motion with the court but if you were looking to it something doesn't make sense if you were looking to affiliate yourself with somebody that could aid you in this case you would mention this case because it's the only case you got in criminal court to DeRusso and the immediate response back from DeRusso would be oh wait a minute we got a problem here because I am representing a key witness in that conversation unfortunately only happened after we had sort of formalized a relationship I guess at that point you know we could have undone everything but but we also there was another as I indicated there was another case that was driving this relationship as well so so that was the so was that a brief in that case not court of your honor it's it's it's it's a class-action lawsuit in section 83 lawsuit that's going on in in in district court in the Virgin Islands but it's it's not it's it's not something which I'm currently being compensated for I guess you would say it's something which I'm permitted to do by by brisa max that I'm working on with attorney DeRusso so it's not really a brisa max case the brisa max is not a client so what makes you if you if you good good I'm sorry judge you know you finish up no okay if you have had experience in 20 criminal matters mm-hmm and I can remember back when I was a young associate and a partner would be appointed in a case in a criminal case and it would dump it down on me and I would go off the court and represent someone and you I didn't have the experience that you had which is involvement in 20-some criminal matters what would make you incompetent to represent mr. Valeo well it's not you know it's not having to do with my ability to go into court and represent it but there's a lot of representing you know defendants in a criminal matter that you know you do outside of a courtroom and I don't have for example I simply don't have an office where it's appropriate for me to meet with witnesses I don't know or with the I have a Lexus Nexus subscription but as I indicated I don't have billing software I don't I don't have anything that you would normally associate with you know being an attorney in a law firm yeah and so it's a lack of infrastructure I think that you know I don't have a relationship right now with an investigator I none of the all of these things I think are necessary to provide effective representation in a criminal matter and I don't have them are you involved in any other criminal matters currently in the VI or elsewhere no your honor can't have no further questions okay I have nothing further thank you thank you everyone thank you both counsel I would ask that a transcript be prepared of this or argument and miss Edwards if you would mind just have having the please is that a problem we can split it but if the government wouldn't mind picking it up sure your honor thank you very much and thank you to everybody and we'll take the matter under advisement